EJK:UAD
F.#2009R2385

**M-10-1097**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE APPLICATION
FOR A SEARCH WARRANT FOR ONE
GREY/BLACK APPLE iPHONE, MODEL
NUMBER: A1203, SERIAL NUMBER:
5K827DPOWH8, FCC ID: BCGA 1203
AND IMEI NUMBER: 011654000442641

AFFIDAVIT IN SUPPORT
OF SEARCH WARRANT

(T. 21, U.S.C., §§ 841,
846, 952(a) and 960)

- - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

SEAN GABAY, being duly sworn, deposes and says that he is a Special Agent with United States Immigration and Customs Enforcement ("ICE"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that there will be located within ONE GREY/BLACK APPLE iPHONE, MODEL NUMBER: A1203, SERIAL NUMBER: 5K827DPOWH8, FCC ID: BCGA 1203 AND BEARING IMEI NUMBER: 011654000442641 (the "Subject Device"), electronically stored information, including voice messages, text messages, photographs, names, addresses, telephone numbers, call logs and other information relating to narcotics distribution, all of which may constitute evidence, fruits and instrumentalities of violations of, among other statutes, Title 21, United States Code, Sections 841, 846, 952(a) and 960.

The source of my information and the grounds for my belief are as follows:[1]

1. I have been a Special Agent with ICE for over four years. As an ICE Special Agent, I have participated in narcotics distribution investigations. Through my training, education and experience as an ICE Special Agent, I have become familiar with the manner in which narcotics are distributed, the techniques used by narcotics traffickers to commit their crimes, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. The statements contained in this affidavit are based upon my personal participation in the investigation, conversations with other law enforcement agents, including officials of United States Customs and Border Protection ("CBP"), and my review of reports.

3. The Subject Device is currently in the custody of ICE at John F. Kennedy International Airport ("JFK") in Queens and, as set forth more fully below, was recovered from the defendant CASSIO VERTIL's hotel room following his December 14, 2010 arrest.

---

[1] Because the sole purpose of this affidavit is to establish probable cause to search, I have not set forth a description of all the facts and circumstances of which I am aware with regard to this case.

4. On or about December 13, 2009, co-defendant GREGORY NERETTE arrived at JFK in Queens, New York, aboard American Airlines flight 896 from Port-au-Prince, Haiti. During a border enforcement examination, a CBP Officer observed a bulky item under NERETTE's pants, on the upper part of NERETTE's right thigh. The CBP Officer conducted a pat-down of NERETTE's legs, which revealed a package wrapped in black and clear tape under NERETTE's pants. The CBP officer removed the package and probed it, revealing a white, powdery substance, which field-tested positive for cocaine. The total net weight of cocaine recovered was 1,192.9 grams.

5. NERETTE was placed under arrest. Subsequent to the reading of his Miranda warnings, NERETTE agreed to cooperate with ICE Agents. NERETTE then stated, in sum and substance, that he was recruited by individuals in Haiti to smuggle drugs into the United States. He further stated that two individuals - conspirators #1 and #2 - provided NERETTE with the drugs and instructed NERETTE to check into a hotel upon arrival in New York and then to call a Haitian male named "Cassio." They instructed that Cassio would pick up the drugs and give NERETTE $4,000.00 in cash.

6. On December 13, 2009, NERETTE agreed to make consensually monitored telephone calls to the defendant CASSIO VERTIL.

7. On December 14, 2009, NERETTE was escorted by ICE agents to a Doubletree Hotel, located at 135-30 140 Street, in Jamaica, New York. After checking into the Doubletree Hotel, NERETTE made several consensual calls to the defendant CASSIO VERTIL. During one of these calls, VERTIL agreed to meet NERETTE at the Doubletree Hotel.

8. On December 14, 2009, at approximately 7:17 a.m., VERTIL arrived at NERETTE's room at the Doubletree Hotel. NERETTE asked VERTIL for the money that co-conspirators #1 and #2 had promised to pay him for transporting the drugs. VERTIL responded, in sum and substance, that the money was at his nearby hotel. VERTIL told NERETTE that VERTIL had a taxicab waiting for him outside and instructed NERETTE to return with him to his hotel. NERETTE declined. VERTIL then said that he would go back to his hotel and return with the money. VERTIL then attempted to leave NERETTE's hotel room and was placed under arrest by ICE agents.

9. ICE agents conducted a search incident to arrest of VERTIL. As a result of that search, ICE agents found, among other items, an electronic hotel swipe key and a driver's license in the name of "Kenel Vertil." The defendant CASSIO VERTIL was given his Miranda warnings and waived his rights. VERTIL informed ICE agents that "Kenel Vertil" is the name of his brother and stated, in sum and substance, that co-conspirator #1

had instructed him to meet with NERETTE.

10. ICE agents spoke with a taxi driver who was waiting for VERTIL outside the Doubletree Hotel. The taxi driver informed the ICE agents that he had earlier picked up VERTIL at the Best Western Kennedy Airport hotel.

11. ICE agents drove to the Best Western Kennedy Airport hotel and confirmed with hotel personnel that on December 13, 2009, an individual had checked into room 108 under the name "Kenel Vertil." ICE agents reviewed a surveillance videotape recording of the check-in counter at the Best Western Kennedy Airport hotel and confirmed that the defendant CASSIO VERTIL had checked into the hotel on December 13, 2009.

12. Soon thereafter, ICE agents obtained a search warrant to search VERTIL'S hotel room at the Best Western. During the search, they found, among other things, approximately $4,500 in cash, debit cards in VERTIL's name, the Subject Device, and a piece of paper with the word "Doubletree" and NERETTE's phone number on it. After the Subject Device was seized, ICE agents called the telephone number that NERETTE had used to reach VERTIL, and the Subject Device rang.

13. Based on the above-described facts, I submit that there is probable cause to believe that the Subject Device contains records of incoming and outgoing telephone calls, missed calls, stored voice mail messages, text messages, emails,

photographs, navigational data and electronic organizers containing names, addresses and telephone numbers, all related to the defendant CASSIO VERTIL's narcotics trafficking activities.

WHEREFORE, I respectfully request that a search warrant issue allowing United States Immigration and Customs Enforcement Agents and other federal agents, with proper assistance from other law enforcement officers, to do the following: gain access to, search and retrieve from ONE GREY/BLACK APPLE iPHONE, MODEL NUMBER: A1203, SERIAL NUMBER: 5K827DPOWH8, FCC ID: BCGA 1203 AND BEARING IMEI NUMBER: 011654000442641, electronically stored information including, without limitation, records of incoming and outgoing telephone calls, missed calls, stored voice mail messages, text messages, emails, photographs, navigational data and electronic organizers containing names, addresses and telephone numbers, all related to the defendant's narcotics trafficking activities and all of which may constitute evidence,

fruits, and instrumentalities of violations of, among other statutes, Title 21, United States Code, Sections 841, 846, 952(a) and 960.

```
                                    _____
                                    Sean Gabay
                                    Special Agent
                                    Immigration and Customs Enforcement
```

Sworn to before
22nd day of September, 2010

_____
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK